# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TONY CLARK,

        Defendant-Appellant.

UNPUBLISHED
April 12, 2018

No. 336656
Wayne Circuit Court
LC No. 16-002944-01-FC

Before: SAWYER, P.J., and HOEKSTRA and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, two counts of assault with intent do great bodily harm, MCL 750.84, armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 70 to 105 years' imprisonment for the second-degree murder conviction, 20 to 40 years' imprisonment for each of the assault with intent to do great bodily harm convictions and for the armed robbery conviction, one to five years' imprisonment for the felon in possession of a firearm conviction, and five years' imprisonment for the felony-firearm, second offense conviction. For the reasons explained in this opinion, we affirm.

This case arises out of the fatal shooting of Derrick Lindsay and related crimes. The crimes occurred on March 5, 2016, outside an after-hours club known as the VIP club. At trial, witnesses identified defendant as the shooter, and Sharita McCann testified that defendant confessed to her that he committed the shooting. The jury convicted defendant as noted above.

## I. LOST EVIDENCE

Defendant first argues that he was denied his constitutional right of due process because the police lost the surveillance video showing the crimes being committed. We disagree.

A defendant's claim that he was denied due process is reviewed de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). Any factual determinations are reviewed for clear error. *People v Tracey*, 221 Mich App 321, 323; 561 NW2d 133 (1997). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

-1-

" '[T]he suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *Arizona v Youngblood*, 488 US 51, 55; 109 S Ct 333; 102 L Ed 2d 281 (1988), quoting *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. [*Youngblood*, 488 US at 57.]

Hence, the failure to preserve "potentially useful evidence" does not violate due process unless the defendant can demonstrate bad faith. *Id*. at 58. "Defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). See also *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012) ("If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process.").

Here, defendant has not shown that the lost video evidence was potentially exculpatory or that the police acted in bad faith. In his appellate brief, defendant quotes portions of the grand jury testimony of Detective Gary Przybyla, the officer-in-charge, indicating that the lost video showed defendant committing the crime. At the hearing on defendant's motion to dismiss the charges due to the loss of the video evidence, the prosecutor stated that the video showed someone committing the crime but that "you cannot make out who those people are because it's too dark. The facial features are not clear enough, so it's not exculpatory because it – it's not exculpatory as to this Defendant or anyone else because you really can't see or make out who that person is." In either event, whether the video showed defendant committing the crime or the person committing the crime could not be identified from the video because it was too dark, defendant has not presented any evidence that the video was potentially exculpatory. Nor is there evidence of bad faith on the part of the police. As Przybyla indicated, the video was not downloaded correctly by the police, and the original video was erased by the owner of the VIP club after the police returned the video equipment to the owner. Defendant has offered no evidence contradicting this explanation of how the video was lost. At most, the record reflects negligence on the part of the police in failing to ensure that the video was downloaded correctly before returning the video equipment to the owner of the VIP club. Mere negligence does not constitute bad faith. See *Youngblood*, 488 US at 58 (finding no evidence of bad faith where the failure of the police to preserve evidence could "at worst be described as negligent."). Because defendant has failed to demonstrate that the lost video was potentially exculpatory or that the

police acted in bad faith, he has not established a due process violation. *Id*. at 57-58; *Heft*, 299 Mich App at 79; *Johnson*, 197 Mich App at 365.[1]

## II. JURY INSTRUCTIONS

Defendant next argues that the trial court erred in denying his request for an adverse inference instruction regarding the lost video evidence. We disagree. Questions of law pertaining to jury instructions are reviewed de novo, but a lower court's determination whether a jury instruction applies to the facts of a case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). Defendant's jury instruction argument is devoid of merit. As explained earlier, there is no evidence that the police or the prosecutor acted in bad faith in the loss of the video evidence. Therefore, the trial court properly declined to instruct the jury that the missing video would have been favorable to defendant. See *People v Davis*, 199 Mich App 502, 514-515; 503 NW2d 457 (1993), overruled on other grounds by *People v Grissom*, 492 Mich 296 (2012) (holding that the trial court did not err in declining to give an adverse inference instruction where the defendant failed to show that the prosecutor acted in bad faith in failing to produce evidence); see also 23A C.J.S. Criminal Procedure and Rights of Accused § 1862 ("An instruction . . . is appropriate only where the state's failure to preserve or collect the missing evidence was intentional, and the potentially exculpatory nature of the evidence was apparent at the time it was lost or destroyed.").

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the prosecutor presented insufficient evidence to support his convictions. Specifically, defendant contends that there was insufficient evidence to establish defendant's identity as the shooter. We disagree.

"To determine whether there was sufficient evidence to support a conviction, we review the evidence de novo, in the light most favorable to the prosecutor, and decide whether a rational fact-finder could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

---

[1] Defendant vaguely asserts that he has been denied his constitutional rights to present a defense and to confront witnesses, but he fails to elaborate sufficiently on those assertions. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Defendant has thus not properly presented those issues for appellate review. *Id*.

Defendant challenges the sufficiency of the evidence on the ground that the testimony of the eyewitnesses was inconsistent in describing defendant's appearance. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Moreover, "positive identification by witnesses may be sufficient to support a conviction of a crime." *Id*.

In this case, Marquis Terrill Turner and Jalen Ja'von Watkins each identified defendant at trial as the shooter. Turner had also previously identified defendant in a photo array before trial. Also, Sharita McCann testified that defendant confessed to her that he committed the shooting. Hence, the prosecutor presented sufficient evidence of defendant's identity as the person who committed the crimes. See *id*. Defendant emphasizes inconsistencies in various eyewitnesses' descriptions of the shooter's height, physique, and apparel. But, again, it was for the jury to weigh the evidence and evaluate the credibility of witnesses, *Kanaan*, 278 Mich App at 619, including the credibility of identification testimony, *Davis*, 241 Mich App at 70. Any inconsistencies in eyewitnesses' descriptions of the shooter's physical appearance were thus for the jury to resolve. "[A] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). A reasonable jury could have reconciled the conflicting descriptions by concluding that Turner and Watkins accurately remembered defendant's face even if some eyewitnesses had poor memories regarding the shooter's height, physique, or apparel. Further, even if the eyewitness descriptions of the shooter varied, the jury could also have credited McCann's testimony regarding defendant's confessed role in the shooting. Defendant's challenge to the sufficiency of the evidence is therefore without merit.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel. In particular, defendant contends that his attorney provided ineffective assistance by failing to object to portions of McCann's testimony involving defendant's robbery and shooting of McCann. We disagree.

"[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *Heft*, 299 Mich App at 80. Defendant did not move for a new trial or an evidentiary hearing on this issue below. Therefore, the issue is unpreserved. *Id*. Because defendant did not move in the trial court for a new trial or an evidentiary hearing on this issue, our review is limited to mistakes apparent from the record. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Defense counsel is presumed effective. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's

competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Defendant concedes that McCann's testimony regarding defendant's confession to the crimes in the instant case was admissible but argues that McCann's testimony concerning defendant's robbing and shooting of McCann was inadmissible under MRE 404(b). Defendant contends that defense counsel was ineffective for failing to object to McCann's testimony concerning defendant's assault on her or failing to move to limit McCann's testimony in this regard. However, although counsel could have potentially objected under MRE 404(b) to evidence that defendant robbed and shot McCann, defendant's ineffective assistance claim is nevertheless without merit because it appears from the record that counsel made the strategic decision to forgo any objection to McCann's testimony regarding the robbery and shooting at her home in order to use this evidence to discredit McCann and cast doubt about defendant's guilt. In particular, on cross-examination, defense counsel elicited an acknowledgement from McCann that she wanted defendant to spend the rest of his life in prison for what he did to her and that she understood he was only receiving 15 years' imprisonment for the charges related to shooting her. Defense counsel also questioned McCann about the fact that in her initial statements to police about defendant's assault on her, she did not disclose the fact that defendant had confessed to committing the crimes at issue in the instant case. Defense counsel made these same points in closing argument and also stressed that the bullet recovered from Lindsay's body could not be matched to the bullet recovered from the floor of McCann's home. These arguments and credibility challenges would not have been possible without the admission of McCann's testimony concerning defendant's assault on her. The alternative would have been for the jury to hear only McCann's testimony that defendant confessed to committing the instant crimes without hearing the additional testimony that provided a basis for defense counsel to challenge McCann's credibility. Defendant has thus failed to overcome the presumption that the declination to object to McCann's testimony about defendant's assault on her constituted a sound trial strategy. *Petri*, 279 Mich App at 411. That a strategy is unsuccessful does not make defense counsel's performance deficient. *Id*. at 412.

## V. REQUEST FOR DEFENSE EXPERT

Finally, defendant argues that the trial court abused its discretion in denying his request for the appointment of a defense expert in computer forensics. We disagree.

"This Court reviews for abuse of discretion a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert witness." *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*. at 617.

MCL 775.15 provides a trial court with discretion to authorize payment for an expert witness for an indigent defendant. *Carnicom*, 272 Mich App at 617. This provision states:

> If any person accused of any crime or misdemeanor, and about to be tried therefor in any court of record in this state, shall make it appear to the satisfaction of the judge presiding over the court wherein such trial is to be had, by his own oath, or otherwise, that there is a material witness in his favor within the

jurisdiction of the court, without whose testimony he cannot safely proceed to a trial, giving the name and place of residence of such witness, and that such accused person is poor and has not and cannot obtain the means to procure the attendance of such witness at the place of trial, the judge in his discretion may, at a time when the prosecuting officer of the county is present, make an order that a subpoena be issued from such court for such witness in his favor, and that it be served by the proper officer of the court. And it shall be the duty of such officer to serve such subpoena, and of the witness or witnesses named therein to attend the trial, and the officer serving such subpoena shall be paid therefor, and the witness therein named shall be paid for attending such trial, in the same manner as if such witness or witnesses had been subpoenaed in behalf of the people. [MCL 775.15.]

"As MCL 775.15 makes clear, a trial court is not compelled to provide funds for the appointment of an expert on demand." *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003).

> To obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert. It is not enough for the defendant to show a mere possibility of assistance from the requested expert. Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness. [*Carnicom*, 272 Mich App at 617 (internal citations omitted).]

In this case, defendant asserts that an expert in computer forensics "could have potentially recovered the missing video and could have informed the jury and the judge about how the video was apparently the only video that wasn't downloaded." However, it was undisputed at trial that, while the police successfully downloaded some footage from the security cameras at the VIP club, the video footage showing the murder was not downloaded correctly. It is not clear how testimony from an expert on this matter would have aided the defense. Defendant's suggestion that an expert could somehow have recovered the missing video is pure conjecture. And even if the video could have been recovered, there is no indication that it would have benefited the defense. Przybyla's grand jury testimony quoted by defendant suggests that the video showed defendant committing the crime, whereas the prosecutor at the motion hearing indicated that the video was not exculpatory with respect to defendant or anyone else because the shooter's identity could not be determined from the video. Defendant has shown nothing beyond the mere possibility of assistance from the requested expert in computer forensics. He has not shown that testimony from such an expert would likely benefit the defense. Thus, he has not shown that the trial court abused its discretion by denying his request for an expert.

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Christopher M. Murray