*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 6, 2019

Plaintiff-Appellee,

v

No. 323741
Wayne Circuit Court
LC No. 14-001748-FC

JOHNNY RAY KENNEDY,

Defendant-Appellant.

ON REMAND

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

This case is once again before us following a remand by our Supreme Court which instructs this Court to re-examine defendant's claim of error concerning his request for a DNA expert by applying the due process analysis set forth in *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985), utilizing the "reasonable probability" standard announced in *Moore v Kemp*, 809 F2d 702 (CA 11, 1987). *People v Kennedy*, 502 Mich 206, 210; 917 NW2d 355 (2018) (*Kennedy II*). We affirm.

## I. FACTS & PROCEDURAL HISTORY

On November 17, 1993, a dead body was discovered in the basement of an abandoned office building in Detroit. The body was identified as Tanya Harris, and the medical examiner determined that she died by strangulation. After an investigation, the police had no leads as to who murdered her. In 2011, while "working on cold cases," the Detroit Police Department sent a vaginal and rectal swab taken from Harris to the Michigan State Police Crime Lab for DNA testing. After testing, it was determined that the swabs contained DNA from Harris and defendant. As a result, defendant was charged with open murder for the death of Harris, and following a jury trial, he was convicted of first-degree murder and sentenced to life imprisonment.

Defendant appealed as of right to this Court, raising several claims of error. Of significance here, defendant argued that the trial court abused its discretion by denying

defendant's motion to appoint a DNA expert, Brian Zubel, to assist the defense in its preparation for trial.[1] The majority in this Court rejected that claim of error, in part, relying on the now-overruled holding in *People v Tanner*, 469 Mich 437; 671 NW2d 728 (2003), and affirmed defendant's conviction and sentence. *People v Kennedy*, unpublished per curiam opinion of the Court of Appeals, issued July 26, 2016 (Docket No. 323741) (*Kennedy I*). Defendant sought leave to appeal, and the Supreme Court, after hearing oral arguments on defendant's application, issued an opinion overruling *People v Jacobsen*, 448 Mich 639, 641; 532 NW2d 838 (1995), and *Tanner*, 469 Mich 437, "to the extent that they h[e]ld or suggest[ed]" that an indigent defendant's request for the appointment of an expert at state expense is governed by MCL 775.15. *Kennedy II*, 502 Mich 206. The Supreme Court vacated *Kennedy I* and remanded the instant case to this Court with these instructions:

> . . . we REMAND to the Court of Appeals for application of the *Ake* due process analysis and, in particular, consideration of whether defendant made a sufficient showing that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. We leave to the Court of Appeals on remand all remaining issues, which shall be resolved consistently with this opinion. [*Kennedy II*, 502 Mich at 228 n 53.]

On remand in this Court, the parties filed a stipulated motion to remand to the trial court to expand the appellate record. Specifically, the parties agreed that "[a]bout a week before oral argument" in the Supreme Court, the parties' attorneys each spoke with the defendant's trial attorney, who informed them that after the trial court denied his request to appoint the requested DNA expert, Zubel, counsel nevertheless hired Zubel with his own funds, although he "claim[ed] that he could not afford to retain [Zubel] for all of the assistance sought." The parties sought remand to the trial court to expand the record with regard to "all of the relevant facts and details" concerning counsel's consultation with Zubel. This Court granted the requested relief, remanding to the trial court and retaining jurisdiction. *People v Kennedy*, unpublished order of the Court of Appeals, entered August 8, 2018 (Docket No. 323741).[2]

On remand, the trial court held an evidentiary hearing. Defendant's trial counsel explained that after the trial court denied his motion to retain Zubel at state expense, counsel nevertheless retained Zubel at his own expense because counsel felt that, without Zubel's assistance, he would have been unable to competently represent defendant at trial. Even so, counsel testified that because he knew that he would be personally responsible for paying

---

[1] Because Zubel is now deceased, he was unavailable to participate in the remand proceedings on February 8, 2019.

[2] In *Kennedy II*, 502 Mich at 211-212 n 4, the Supreme Court held that on remand in this Court, the parties were permitted to "argue the effect of this stipulation on defendant's claim that the trial court's denial of his motion for the appointment of an expert violated his constitutional right to present a defense."

Zubel's fees, counsel limited his consultations with Zubel, and counsel would have consulted the expert further but for the associated expense.

Specifically, counsel opined that, had he been able to consult Zubel further, counsel "perhaps could have done a better cross examination" of one of the prosecution's expert witnesses. Counsel also admitted that he had personally "thought that the DNA was compelling that they [i.e., the defendant and the victim] had sex" before her death, and Zubel had reached the same conclusion. Moreover, counsel acknowledged that after initially reviewing the DNA evidence against defendant, that Zubel told counsel, "looks like they've got your guy[.]" which counsel understood as meaning, "that they had a prima facie hit, as they called it, that was sufficient for the prosecutor to move forward." Zubel opined that based on the information available to him before trial, he could not specifically identify admissible evidence that would show any problems with the DNA testing in this case.

## II. ISSUE PRESERVATION AND STANDARD OF REVIEW

At trial, defendant cited the Sixth Amendment in support of his motion to appoint Zubel at state expense. However, he did not cite any of the due process clauses of either our state or federal constitutions, nor did he argue that the trial court's failure to grant his motion would deprive him of due process as he now contends in his supplemental brief on remand. It is well-settled that "an objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground," *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003), and ergo "[c]onstitutional challenges must be raised in the trial court; otherwise, those challenges are 'not properly preserved for appellate review,' " *People v Green*, 322 Mich App 676, 681; 913 NW2d 385 (2018), quoting *People v Hogan*, 225 Mich App 431, 438; 571 NW2d 737 (1997). Thus, defendant's constitutional challenge is unpreserved.

Unpreserved claims of constitutional error are reviewed under the plain-error test, *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999)[3] which "has four elements":

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) . . . the plain error affected substantial rights . . . [, and 4) ] once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018), quoting *Carines*, 460 Mich at 763 (alterations and ellipses in *Randolph*).]

---

[3] Federal courts have also recognized the propriety of applying plain-error review to unpreserved claims of error such as this one. See, e.g., *United States v Perez*, 503 Fed Appx 688, 691 (CA 11, 2013) ("[W]e have never expressly applied *Ake*'s rule outside of the context of psychiatric experts. Thus, the district court did not plainly err.") (citation omitted).

"A 'clear or obvious' error under the second prong is one that is not subject to reasonable dispute." *Randolph*, 502 Mich at 10. The third element "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. (quotation marks and citation omitted).

III. ANALYSIS

Although defendant's motion is sufficient to satisfy the *Moore* "reasonable probability" standard, defendant is not entitled to appellate relief under the plain-error test.

" '[A] defendant [seeking appointment of an expert under *Ake*] must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.' " *Kennedy II*, 502 Mich at 228, quoting *Moore*, 809 F2d at 712. " 'Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful.' " *Id.* at 225, quoting *Moore*, 809 F2d at 712. " 'At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime.' " *Id.*, quoting *Moore*, 809 F2d at 712. "[T]he defendant's showing must also include a specific description of the expert or experts desired" and "should inform the court why the particular expert is necessary." *Id.*, quoting *Moore*, 809 F2d at 712.

In pertinent part, the motion to appoint Zubel stated:

1. That . . . the defendant is charged with murder in the first degree.

2. That the decedent victim is one Tanya Harris, whose body was found in an abandoned building in November 1993.

3. That the only evidence against the defendant, who is an inmate in the Michigan Department of Corrections, is a test of DNA material performed by one Amy Altesleben, a forensic scientist employed by the Michigan State Police.

4. That, a prosecution based largely or entirely upon the presentation of identification evidence based upon DNA poses an especially technical and complex range of issues for defense counsel, as the essence of the prosecutions' case is the presentation of a report from a qualified technician or scientist. That report is conclusory and counsel who would render constitutionally effective assistance to his client and zealously confront the witnesses and evidence called in the prosecution's case in chief, must be educated and schooled to no small extent in the science and accepted protocols of DNA extraction, preservation, testing, as well as dangers of contamination and the steps and measures taken to document a particular test, and to maintain the proper calibration of testing equipment, all just to some of the areas in which counsel must be prepared to cross-examine.

5. That counsel seeks an order of the court to appoint as an expert in what may be called "DNA litigation" one Brian Zubel of Fenton, Michigan.

6. Mr. Zubel is an attorney licensed to practice in Michigan, who has been a member of the American Academy of Forensic Sciences since 2008. He has presented DNA evidence as a prosecuting attorney in Oakland, Berrien, and Genesee counties and has litigated in similar fashion as an assistant attorney general of the state of Michigan in the case of ***People v Unger*, 278 Mich App 210 (2008)**.

7. That Mr. Zubel's Curriculum Vitae is attached . . . , as well as a scholarly article from the September 2013 issue of the Criminal Law Section newsletter.

8. That in Wayne County Circuit Court, Mr. Zubel has been recognized as an expert by the Honorable Annette Jurkewicz Berry and by the Honorable Vonda Evans.

9. That, without the active assistance of a learned expert, counsel will not be able to confront the witnesses and to shed light on any questionable issues that may have occurred during the lengthy storage and testing procedures.

Notably, when counsel filed the above motion, he had yet to receive requested discovery materials from the prosecution concerning the DNA "collection/processing/analysis in this case," which counsel had specifically requested at Zubel's recommendation.

Defendant's motion was sufficient to satisfy the *Moore* reasonable probability standard in light of the limited discovery concerning the DNA evidence that had been provided to defense counsel at the time the motion was filed. See *Moore*, 809 F2d at 712 n 10 ("The difficulty of the defendant's task will vary depending on the scope of the jurisdiction's discovery rules."). Among other things, the motion informed the trial court of the nature of the prosecution's case, the identity and background of the desired expert, how his appointment would be useful to the defense, and why counsel believed that it was necessary to ensure a fair trial. Moreover, given the highly technical, scientific nature of DNA evidence, that counsel indicated he would be unable to understand that evidence or to meaningfully cross-examine the prosecution's experts concerning it without expert assistance, and that DNA evidence was the sole foundation of the charges against defendant, it seems that defendant demonstrated that there was "a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." See *Kennedy II*, 502 Mich at 228, quoting *Moore*, 809 F2d at 712.

Nonetheless, defendant is not entitled to appellate relief under the plain-error test. Specifically, defendant fails to carry his burden of demonstrating that the error in question was outcome determinative. Defendant's trial counsel ultimately *did* retain Zubel for a fairly extensive consultation concerning the DNA evidence. Zubel spent more than 10 hours on the case and prepared a written report for counsel. Although counsel asserted that he would have consulted Zubel further had he not been personally responsible for paying the resultant fees, he

was unable to specify what, exactly, the defense would have gained through further consultation with Zubel. Rather, counsel, and now the dissent, speculates that it was possible that further consultation might have allowed for better cross-examination of one of the prosecution's witnesses. However, counsel also acknowledged that neither he nor Zubel were able to identify any specific problems with the DNA testing that was performed in this case.[4] In other words, defendant has failed to establish that Zubel's greater involvement in this case would have altered the outcome in some way at trial in defendant's favor. Therefore, defendant has not demonstrated that he is entitled to relief under the *Carines* test.

IV. CONCLUSION

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Riordan

---

[4] The dissent notes that it was revealed at the evidentiary hearing on remand that defendant was not the only match to the DNA sample. During that hearing, defense counsel testified that there were three possible DNA contributors to a sample taken from the under the fingernails of the victim's left hand. As defense counsel explained at the evidentiary hearing, this information was discussed in Zubel's report to defense counsel, and defense counsel cross-examined the prosecution's expert witness about it at trial. Thus, this information was known to defense counsel before trial, the jury was presented with this evidence at trial, and it was contained in the record on appeal. Therefore, this "revelation" of information does not influence our analysis of defendant's assertion of error under the plain-error standard of review.

-6-