*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

PETER FARRIS CASEY II,

      Defendant-Appellant.

UNPUBLISHED
March 23, 2023

No. 360213
Kalamazoo Circuit Court
LC No. 2019-001500-FC

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b); use of the Internet or computer systems to commit specified crimes, MCL 750.145d(2)(f); second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b); aggravated child sexually abusive activity, MCL 750.145c(2)(b); using a computer to commit a crime, MCL 752.797(3)(f); and aggravated possession of child sexually abusive material, MCL 750.145c(4)(b). Defendant was sentenced to 25 to 50 years' imprisonment for CSC-I, five to 20 years' imprisonment for use of the Internet or computer systems to commit specified crimes and using a computer to commit a crime, five to 15 years' imprisonment for CSC-II, five to 25 years' imprisonment for aggravated child sexually abusive activity, and five to 10 years' imprisonment for aggravated possession of child sexually abusive material. The trial court also sentenced defendant to lifetime electronic monitoring, MCL 750.520n.

Defendant argues on appeal that incriminating statements he made to police were procured in violation of his Fifth Amendment right to remain silent. He also argues that lifetime electronic monitoring amounts to an unreasonable search and seizure, and that it is cruel and unusual punishment. We disagree, and therefore affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In 2019, police received a tip that a social media account associated with defendant had exchanged a number of sexually explicit pictures and videos of a young girl. Police officers investigated and learned the exchanges were between defendant and his then-girlfriend, Shannon

Moore. Moore sexually abused her nine-year-old daughter and sent images of the abuse to defendant.

Police conducted a traffic stop of a vehicle in which Moore was the driver and defendant was the passenger. Officers asked defendant for his cell phone, but he refused. Defendant and an officer momentarily struggled, and defendant attempted to pull the phone close to his chest. Defendant eventually handed the phone to officers. Due to this behavior, defendant was placed in handcuffs and briefly detained in the back of a police cruiser. Defendant was informed that he was being detained, but he was not under arrest. Soon after, officers removed the handcuffs and he was released from the cruiser. Defendant remained at the scene while officers interviewed Moore.

About a half-hour later, the investigating detective approached defendant and asked if he would speak to him in the front cabin of his vehicle. Defendant agreed and sat in the passenger side. Almost immediately, the detective explained that defendant did not have to answer the detective's questions, that he was not under arrest, and that he was free to go. The detective told defendant that the interview was being filmed and showed defendant the location of the camera. The detective later testified he intentionally did not advise defendant of his *Miranda*[1] rights because he did not want to give defendant the impression that he was under arrest. The detective was dressed in civilian clothing and had removed his bullet-resistant vest, but he wore a holstered weapon. Defendant made a number of incriminating statements during the interview—including admissions that he and Moore exchanged images of the victim's genitalia. At the end of the interview, the detective and defendant shook hands and defendant got out of the detective's vehicle.

Before his trial, defendant moved to suppress the statements he made during the interview, arguing that he was not advised of his *Miranda* rights before being subjected to custodial interrogation. The trial court held that defendant was not in custody during the interrogation. The jury found defendant guilty and he was sentenced as noted. This appeal followed.

## II. CUSTODIAL INTERROGATION

Defendant argues the trial court erred in denying his motion to suppress because the detective subjected defendant to custodial interrogation without first advising defendant of his *Miranda* rights. We disagree.

## A. STANDARD OF REVIEW

"Whether a person is in custody for purposes of the *Miranda* warnings requirement is a mixed question of law and fact that must be answered independently after a review of the record de novo." *People v Cortez*, 299 Mich App 679, 691; 832 NW2d 1 (2013). "[A]n 'in-custody' determination calls for application of the controlling legal standard to the historical facts." *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001). The trial court's factual findings are

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-2-

reviewed for clear error. *Cortez*, 299 Mich App at 691. But, "the trial court's ultimate decision concerning a motion to suppress" is reviewed de novo. *Id*.

## B. LAW AND ANALYSIS

The Fifth Amendment to the United States Constitution states, in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself." US Const, Am V; see also Const 1963, art 1, § 17. To protect this right, any person subject to custodial interrogation by law enforcement must be advised they "ha[ve] a right to remain silent, that any statement [they do] make may be used as evidence against [them], and that [they have] a right to the presence of an attorney, either retained or appointed." *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

In this case, the pertinent question is whether defendant was "in custody" at the time of the interrogation. Courts apply a totality-of-the-circumstances analysis when considering whether a person was subject to custodial interrogation. *Coomer*, 245 Mich App at 219. "The determination of custody depends on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the person being questioned." *Id*. at 219-220. In making this analysis, "courts consider both whether a reasonable person in the defendant's situation would believe that he or she was free to leave and whether the relevant environment presented the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Cortez*, 299 Mich App at 692 (quotation marks, citations, and alterations omitted). There are a number of factors courts should consider, including: "(1) the location of the questioning; (2) the duration of the questioning; (3) statements made during the interview; (4) the presence or absence of physical restraints during the questioning; and (5) the release of the interviewee at the end of the questioning." *People v Barritt*, 325 Mich App 556, 562-563; 926 NW2d 811 (2018) (citations omitted).

We need not consider factors one, two, and four because defendant concedes these factors either weigh against or are "neutral" with respect to whether he was in custody. Instead, defendant argues factors three and five weigh in favor of a finding that defendant was in custody. With respect to factor three, the relevant question is whether officers fail to tell a suspect he or she is free to leave. *Id*. at 570. At the beginning of the interview, the detective told defendant: "You're not under arrest. You can leave if you want. You don't gotta answer my questions or nothing." Given the unequivocal nature of this statement, it is clear the detective communicated that defendant could leave.

Even so, defendant argues his statements to the detective were a critical piece of the investigation and without these statements, law enforcement would have lacked probable cause for his arrest. But defendant misunderstands this factor. The question is not whether defendant's statements are critical to an investigation. Rather, the relevant question is whether the defendant was told they were free to leave. In this case, the detective informed defendant at the outset of the interview that defendant was free to leave. Therefore, this factor weighs against a finding that defendant was in custody.

Defendant also challenges factor five, "the release of the interviewee at the end of the questioning." *Barritt*, 325 Mich App at 562-563. He points out that the officers did not allow him

access to Moore's vehicle until after his interview, suggesting he was in custody up until his interview was complete. However, defendant acknowledges that he was allowed to leave the scene at the end of the interview. Even if we presumed officers restricted defendant's access to Moore's vehicle, we would still conclude factor five weighs against a finding that defendant was in custody. Indeed, the interview took place in a neighborhood familiar to defendant, and there was no evidence showing defendant could not have left voluntarily at any time.

## III. LIFETIME ELECTRONIC MONITORING

Defendant argues that the imposition of lifetime electronic monitoring is unconstitutionally cruel or unusual and an unreasonable search. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant did not object to the imposition of lifetime electronic monitoring at his sentencing hearing. Therefore, this issue is not preserved for appellate review. See *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Unpreserved claims are reviewed for plain error affecting substantial rights. *Id.* However, the constitutionality of statute is a question of law that we review de novo. *People v Roberts*, 292 Mich App 492, 496; 808 NW2d 290 (2011).

### B. LAW AND ANALYSIS

As defendant recognizes, this Court has already held that lifetime electronic monitoring is not cruel or unusual or an unreasonable search. *People v Hallak*, 310 Mich App 555, 574, 579; 873 NW2d 811 (2015), rev'd in part on other grounds, *People v Hallak*, 499 Mich 879 (2016). Defendant has not provided any basis to distinguish his case from *Hallak*. Therefore, we are bound to follow our decision in *Hallak* and defendant is not entitled to relief on this basis. MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990 . . . .").

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron